## CHARLES FULLER V. THE STATE.

No. 15872.   Delivered May 24, 1933.
Rehearing Denied June 23, 1933.
Reported in 61 S. W. (2d) 825.

The opinion states the case.

*Wm. E. Davenport,* of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, six years in the penitentiary.

It was admitted that appellant shot and killed deceased. Appellant as a witness claimed that he shot in self-defense. We quote from his testimony: "I killed Hugh Rutledge because I thought he was going to kill me; I did not kill him for any relationship he had with my wife." Later, he swore that he heard a motor vehicle stop and heard some one pulling at the screen door, and went out a side door and up to deceased and told him that he, appellant, had asked deceased to stay away from his place, and he would rather deceased would leave. He testified further that about this time some one called him and he turned his head and deceased hit him in the face and also grabbed him. He further testified that he jerked loose, and deceased backed away, went with both hands to his right hip pocket and pulled out a gun, but that he, appellant, was quicker and shot first.

In a dying statement, which was in evidence, deceased said that appellant shot him in the back. Other testimony shows that deceased was shot in the back. No pistol was found on or near deceased after the shooting.

There are three bills of exception in the record. Bill No. 3 was taken to the cross-examination of appellant's wife, the

testimony objected to being set out in question and answer form with the court's approval. None of the exceptions stated appear to be verified as in fact true, and most of the testimony set out reflects negative answers on the part of the witness, and denials of the matters asked about, and nowhere in the record do we find that the former testimony given by the witness, and about which she was being asked when the objections were made,— was offered by the state. We have no means of knowing whether the witness was under arrest at the time she was formerly questioned, or of knowing that the matters sought to be elicited were inadmissible.

Bill of exception No. 5 was taken to the refusal of a special charge which appears to be couched in almost the exact language of another special charge which was given. We find nothing in the other bill of exception worth discussing.

We have examined the exceptions taken to the court's charge and believe none of them present any question calling for discussion. The trial court's charge appears fair and comprehensive.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—Appellant renews his contention that bill of exception No. 3 relating to the cross-examination of his wife reflects error. It appears to be appellant's position that the state was permitted to use the statement made by his wife at her own examining trial—at a time when she was under complaint charging her with the murder of deceased—without first having shown that articles 247 and 248, C. C. P., had been complied with. The first article mentioned requires the magistrate to inform the accused of his right to make a statement relative to the accusation brought against him; and, further, to inform him that he can not be compelled to make any statement whatever, and that if he does make a statement it may be used against him. Article 248 provides that the accused may make a voluntary statement before the examination of any witness. Under the terms of said article, if a statement is made it must be reduced to writing, and is required to be signed by the accused and attested by the magistrate by his own certificate and signature to the execution and signing of the statement.

We have held that where the statement sought to be intro-

duced against the accused upon his trial is a voluntary statement made under the provisions of articles 247 and 248, it must be affirmatively shown that the statutes have been complied with before the statement is properly admissible. Pineda v. State, 273 S. W., 859, and authorities cited. It is observed that article 248 provides that the voluntary statement mentioned in the article shall not be sworn to by the accused. Articles 247 and 248 of the Code relate solely to the voluntary statement of the accused at his examining trial, made before the examination of the witnesses. If the accused voluntarily testifies for himself, under oath, his statements made on the examining trial are admissible against him on a subsequent trial, whether he was or was not under arrest, or cautioned. Dill v. State, 33 S. W., 126; Kirkpatrick v. State, 121 S. W., 511; Brown v. State, 273 S. W., 263. Stated in another way, if at the time of the examining trial the accused makes no such statement as is contemplated by articles 247 and 248, C. C. P., but in due order of procedure takes the witness stand in his own behalf, and testifies under oath as a witness for himself, his testimony may be reproduced against him on the final trial, whether he was warned or not. In such case it is immaterial whether the accused was under arrest or not at the time he testified at the examining trial. Dill v. State, supra; Kirkpatrick v. State, supra.

Looking to the bill of exception, it is observed that it is shown in said bill that appellant's wife was sworn by the magistrate and testified to the matters set out in the statement; and, further, that the witness duly signed the statement. There is nothing in the bill of exception to show that the testimony complained of was embraced in the voluntary statement attempted to be taken under the provisions of articles 247 and 248. On the contrary, the bill is susceptible of the construction that the witness took the stand on the examining trial as a witness for herself and was sworn, and that the testimony used by the state to impeach her was voluntarily given by her under oath as a witness for herself and not as a voluntary statement made under the provisions of articles 247 and 248. This being true, if appellant's wife had been on trial under an indictment charging her with the murder of deceased, the testimony she gave at her examining trial could have been properly reproduced against her. The fact that her testimony on appellant's trial was to the effect that one Barfield had told her to go down and make a statement and they would turn her loose would not, in our opinion, raise the issue as to the voluntary character of the tes-

timony. It is not shown who Barfield was. If he was a person in authority, the bill fails to reflect such fact. Again, the statement of the witness that she was sick when she made the statement and wanted to get out in order that she might see her baby would not, within itself, be sufficient to reject the testimony as being involuntarily given. She did not testify that the statement was involuntarily made by her. Under the circumstances, we are unable to reach the conclusion that the bill of exception shows that the witness did not voluntarily become a witness for herself in her examining trial.

That the wife may be impeached by proof of contradictory statements made to third parties as to material matters inquired about on her direct-examination is well settled by the decisions. Rodgers v. State, 91 Texas Crim. Rep., 38; Escobar v. State, 51 S. W. (2d) 346. Stated in another way, the wife may be impeached by showing declarations made by her to a third party which are contrary to her testimony upon the witness stand, if pertinent to the examination in chief. Where a wife testifies before the grand jury voluntarily and at the instance of her husband who may be under investigation, the declarations made to the grand jury, if contrary to her testimony given on the trial of the case, and pertinent to the examination in chief, may be proven for the purpose of impeachment. Rodgers v. State, supra. If the wife is taken by process before the grand jury, and made to testify, her statements there cannot be proven for impeachment purposes, even though pertinent to the examination in chief. Rodgers v. State, supra; Doggett v. State, 86 Texas Crim. Rep., 98, 215 S. W., 454; Johnson v. State, 148 S. W., 328. The rule last mentioned has been applied by this court to declarations made by the wife to a justice of the peace, sitting under the authority of the statute for the purpose of investigating violations of the law. Turner v. State, 232 S. W., 801.

We know of no case holding that the wife may not be impeached by testimony voluntarily given by her under oath as a witness at her own examining trial. The holding that such testimony may properly be reproduced against her upon the main trial of her case would seem to militate against the conclusion that it could not be used to impeach her as to material testimony given on the trial of her husband for the identical offense with which she was charged at the time of her own examining trial. Appellant's wife was not forced to testify on her examining trial, but availed herself of the right accorded by law to give testimony in her own behalf. On the present

trial she testified that she had told appellant of her improper relations with deceased. At her examining trial she testified she had at no time disclosed to appellant her relationship with deceased. Thus, on a material matter, the state offered the testimony given by the witness at her examining trial to impeach her. From what we have said, it follows that we are constrained to hold that the bill of exception fails to manifest error.

Appellant submitted to the court, as shown in bill of exception No. 5, the following requested instruction: "If you believe from the evidence beyond a reasonable doubt that the defendant on or about the date alleged in the indictment, shot and killed Hugh Rutledge in the county of Upton and state of Texas, and if you believe from the evidence beyond a reasonable doubt that such killing did not occur in the exercise of the right of self-defense on the part of the defendant, as that right has been defined to you, then in this connection you are instructed that if from the evidence you believe, or have a reasonable doubt that the defendant had been informed by his wife of intimate relations with the deceased and you believe or have a reasonable doubt that, by reason thereof, if any, the mind of the defendant was at the time of the killing rendered incapable of cool reflection, or if by reason thereof, the defendant's mind, through anger, rage or resentment was rendered incapable of cool reflection and you believe or have a reasonable doubt that while in such condition of mind he shot and killed the deceased, then under such conditions, if any, you could not assess the defendant's punishment at a period longer than five years confinement in the penitentiary."

Chapter 60, Acts 42nd Legislature, Regular Session, reads as follows: "In all cases tried under the provisions of this Act it shall be the duty of the court, where the facts present the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, and in appropriate terms in the charge to apply the law to the facts as developed from the evidence."

Since the repeal of the statutes defining manslaughter, the court is not required to define the term "adequate cause" other than as same is defined in the chapter above quoted. The charge sought by appellant failed to embrace a correct definition of the

term "adequate cause"; that is, no note was taken of the fact that, under the statute, by the term "adequate cause," is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. The charge as written, in effect, instructed the jury that the information from appellant's wife that deceased had been intimate with her was adequate cause; and that if appellant became angered as a result of receiving such information and his mind was rendered incapable of cool reflection, the punishment could not be assessed at longer than five years confinement in the penitentiary. The question for the jury was whether, under all of the circumstances reflected by the record, the information as to the intimate relations between deceased and appellant's wife afforded such cause as would commonly produce a degree of anger, etc., in a person of ordinary temper sufficient to render the mind incapable of cool reflection; and, further, whether appellant's mind was in such condition. See F. M. Birchfield v. State, Opinion No. 15842, delivered May 3, 1933; N. W. Threadgill v. State, Opinion No. 15842, delivered May 10, 1933. We are constrained to hold that under the law as it now exists the trial court was warranted in refusing to read the charge in question to the jury.

According to appellant's testimony, he did not shoot deceased because of any relations deceased had had with his wife. He said he killed him in self-defense. His testimony was to the effect that he had met deceased several times after his wife had informed him of her relations with deceased, and had made no effort to harm deceased. He said he had merely asked deceased to stay away from his place of business. He declared that on the occasion of the homicide deceased had attacked him, and made a movement as if to pull a pistol, and that he shot deceased believing that his life was in danger. We find no evidence in the record, either from state's witnesses or appellant and his witnesses, raising the issue that at the time appellant killed deceased his mind was incapable of cool reflection because of anger, rage, or resentment arising from the information his wife had given him concerning her relations with deceased.

The sentence is reformed to show that appellant is condemned to confinement in the penitentiary for not less than two nor more than six years.

The motion for rehearing is overruled.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.