### GEORGE W. STEPHENS V. THE STATE.

No. 15979. Delivered October 25, 1933.
Rehearing Denied February 21, 1934.
Reported in 68 S. W. (2d) 181.

398

The opinion states the case.

*Stevens & Stevens,* of Houston, and *Ingram & Ingram,* of Wharton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for 35 years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Charles Peters by shooting him with a gun.

Sometime in 1930 W. L. Thomas had sold a place in Wharton County to August Kobsell. In September, 1932, finding that he would not be able to pay for the place, Kobsell turned it back to Thomas, but claimed that he was entitled to remain on the place until the first of January. Thomas then negotiated the sale of the property to appellant, who was to rebuild a barn which had been blown down during a storm. Thomas was to furnish the material for rebuilding the barn, but it was understood that appellant was to use what he could of the material on the place. Kobsell interposed no objection to appellant building the barn.

On November 3, 1932, appellant, accompanied by his brother, Barney Stephens, went to the place, and, preparing to rebuild the barn, began sawing foundation blocks from a cypress log. Kobsell went to where they were at work and objected to the use of the log, claiming that it did not go with the material on the place, but that he and his father-in-law (Charles Peters), the deceased, had gotten the log from the creek where it had been washed down during the high water occasioned by the storm. Appellant claimed the log as going with the place. After some argument, Kobsell went after deceased, and the two of them returned to where appellant and his brother were at work, and the argument was renewed. In the meantime, appellant had finished sawing up the log and some of the blocks had been placed for the foundation. According to the version of the state, deceased claimed that he and Kobsell should be paid for the log. Appellant replied that if the log belonged to them, they must go to Thomas for their pay. Kobsell testified that when appellant refused to pay for the log he (the witness) said to deceased: "Let's go," that thereupon deceased picked up one of the foundation blocks, saying, "This is a block you ain't going to put under the barn until it is paid for;" that deceased then dropped the block and called to him to look out; that at this point appellant fired a shot which struck him (the witness). Kobsell testified, further, that he tried to hide behind appellant's brother, and that in the meantime appellant shot deceased several times. He said that neither he nor deceased was making any demonstration toward appellant. The proof

on the part of the state was to the effect that deceased had four wounds on his body, and that the last wound was inflicted by appellant after deceased had fallen. Further, it was shown in the proof of the state that deceased and Kobsell were not armed.

Appellant testified that deceased picked up one of the foundation blocks and threw it at him and made a movement to his pocket as if to draw a weapon. He said that he fired at deceased believing that he was in danger of losing his life or suffering serious bodily injury. As to the demonstration of deceased toward appellant, Barney Stephens gave substantially the same testimony as appellant.

The only objection urged against the charge of the court was based on the ground that the court submitted the issue of a killing upon malice aforethought, it being urged that there was an absence of testimony showing that appellant was actuated by malice. We deem the objection not to have been well taken, and express the opinion that the evidence supports the judgment of conviction.

Paragraph 3 of the charge of the court defined "murder without malice" as follows:

"Murder without malice is a voluntary homicide committed without justification or excuse, under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection."

In paragraph 5 of the charge the jury were instructed, in substance, that if they believed beyond a reasonable doubt that appellant was guilty of murder, but entertained a reasonable doubt as to whether he was actuated by malice aforethought the punishment assessed could not be for a period exceeding five years in the penitentiary. In paragraph 7 the court instructed the jury as follows:

"You are further instructed that if you believe from all the evidence before you, beyond a reasonable doubt, that the defendant George W. Stephens, * * * with a gun, * * * did, with intent to kill the said Charles Peters, unlawfully and voluntarily shoot and thereby kill the said Charles Peters, as charged in the indictment, but you do not find from all the facts and circumstances in evidence before you that in such shooting, if any, the defendant, George W. Stephens, acted with his malice aforethought, or if you have a reasonable doubt thereof, then you will find the defendant George W. Stephens, guilty of murder,

and assess his punishment at confinement in the penitentiary for any term of years not less than two nor more than five years."

Thereafter the jury were instructed in paragraph 9 that if they had a reasonable doubt as to whether appellant acted upon his malice aforethought he should be given the benefit of the doubt and his punishment, if any, should be assessed at not more than five years in the penitentiary.

Appellant interposed no objection to the charge of the court for the manner in which murder without malice was submitted, but contented himself with presenting to the court the following requested instruction: "Gentlemen of the jury, you are charged in connection with the court's definition of murder without malice given in his general charge, that it is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause by which it is meant such cause as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, if you believe from the evidence that the deceased Peters seized the cypress block from the foundation of the barn which the defendant was erecting without the consent of the defendant, and should you further believe from the evidence that the defendant, then killed the deceased Peters under such circumstances as would not have justified him in first using all reasonable and necessary force to prevent the removal of said cypress block, then while the defendant may not under such circumstances have been fully justified in taking the life of deceased, that the removal of the said block would have created such adequate cause sufficient to eliminate the question of malice aforethought in taking the life of the deceased. If you therefore believe from the evidence beyond a rasonable doubt that the defendant killed the deceased on account of rage or resentment induced by the taking of said block by the deceased, and you further believe said killing was not justified, then you cannot assess any punishment against the defendant in excess of five years imprisonment in the penitentiary."

The definition the court gave of "murder without malice" is the same as that embraced in the statute. The application of the law to the facts appears not to have been incorrect. As stated, if the charge was inadequate, appellant failed to except thereto, but contented himself with presenting the requested instruction we have heretofore set forth. The requested instruction is manifestly incorrect. It would have, in effect, instructed

the jury that deceased's act in taking possession of the cypress block was adequate cause; and that if appellant became angered as a result of such action on the part of deceased and his mind was rendered incapable of cool reflection, the punishment could not be assessed at longer than five years confinement in the penitentiary. The question for the jury was whether, under all of the circumstances reflected by the record, the action of deceased in taking the property afforded such cause as would commonly produce a degree of anger, etc., in a person of ordinary temper sufficient to render the mind incapable of cool reflection; and, further, whether appellant's mind was in such condition. In short, no note was taken in the requested charge of the fact that, under the statute, by the term "adequate cause" is meant such cause as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection. Fuller v. State, 61 S. W. (2d) 825, and authorities cited. Again, since the repeal of the statutes defining manslaughter, the court is not required to define the term "adequate cause" other than as same is defined in chapter 60, Acts 42d Legislature, Regular Session. Fuller v. State, supra.

It is observed that in the requested charge no reason was assigned why it was deemed more appropriate than the charge contained in the general instructions prepared by the court. In the present case, as stated, the court did charge on murder without malice and apply the law to the facts, and if appellant thought it erroneous or inappropriate he should have pointed out by specific objection in writing the particular matters he complained of and which his special charge was thought to remedy. Bell v. State, 268 S. W., 168. We are constrained to hold that the requested charge, which was incorrect in the matters heretofore pointed out, cannot be held, under the circumstances, to take the place of a specific written objection. The situation here is not deemed to be within the holding that, where there is an entire omission from the court's charge of an instruction on a pertinent issue, a requested correct special charge on that issue is sufficient to raise the error in omitting it without a specific objection in writing calling attention to the omission.

Bill of exception No. 1 recites that appellant had been convicted of a felony in Bexar County in September, 1921; that appellant's counsel appeared before the court in the absence of the jury and requested that the district attorney be instructed to refrain from cross-examining appellant as to said former conviction on the ground that it was too remote; that the mo-

tion was overruled and the district attorney permitted to ask appellant questions touching his former conviction. The bill refers to bill of exception No. 2 for a complete statement of the occurrence. The bill is qualified by the court as follows: "The court instructed the district attorney, in private, not to ask about the conviction of defendant in 1921, but told the district attorney that he could ask the defendant if he had been sentenced to the penitentiary in 1923; the district attorney having a copy of the police record of the defendant from Bexar County, showing said defendant to have been sentenced to the penitentiary in 1923." Bill of exception No. 2 embraces recitals in substance as follows: Over appellant's objection that the testimony was too remote, the district attorney, in his cross-examination of appellant, propounded to him the following question: "Isn't it a fact that on the third month, sixth day, 1923, you were convicted and sentenced to serve life imprisonment from San Antonio?" Appellant answered: "I will answer that 'no,' with this reservation, sir: That I was sentenced previous to that, and that is when my sentence was commuted; I was sentenced to death in September of 1921 and Governor Neff commuted my sentence to life imprisonment at that time: I think it was about that time; one of the hardest governors, supposed to be, that the state ever had on crime." Appellant's counsel then moved the court to exclude the answer from the consideration of the jury. The bill of exception is qualified as follows: "The jury was retired and the district attorney stated to the court that he now desired to ask the defendant the following question: 'Isn't it a fact that on the third month, sixth day, 1923, you were convicted and sentenced to serve life imprisonment from San Antonio?' Defendant's counsel objected and defendant did not answer. The court overruled the objection and stated that he would allow the district attorney to ask said question to affect the credibility of the witness. The question was not answered in the absence of the jury. When the jury was returned, the district attorney asked the defendant the following question, 'Now Mr. Stephens isn't it a fact that on the third month, the sixth day, 1923, you were sentenced for murder from San Antonio to life imprisonment?' Defendant said 'No' and explained his answer as shown by the above bill, which explanation was a voluntary statement made by the witness."

When the bills are considered in connection with the qualification it manifestly appears that appellant was not required to answer any question as to a conviction in 1921. The court had instructed the district attorney to make no inquiry con-

cerning a conviction of that date. The data the district attorney had in his possession showed that appellant had been convicted in 1923, which was less than ten years prior to the trial of the present case. When appellant was asked if he had been convicted in 1923 he answered "No." If he had contented himself with his negative answer, it would seem that the inquiry would have ended, as the court had already indicated that questions concerning an earlier conviction would not be permitted. However, appellant voluntarily stated to the jury that he had been convicted in 1921, and given a death penalty, which was commuuted in 1923 by Governor Neff. Again, it appears that appellant stated without objection, in response to a question by the district attorney, that he was released from the penitentiary in 1926. Appellant appears to be in the attitude of urging that the action of the court in declining to withdraw testimony voluntarily given by him should be held to constitute reversible error. The opinion is expressed that an accused may not voluntarily give testimony and then predicate error upon the refusal of the court to strike it from the consideration of the jury. Crowley v. State, 35 S. W. (2d) 437; Bruce v. State, 21 S. W., 681; Weaver v. State, 17 S. W. (2d) 1066. Again, appellant made no motion to withdraw from the consideration of the jury his statement to the effect that he was released from the penitentiary in 1926. As far as the record reflects the matter, this testimony went to the jury without objection. The jury knew from this statement, made by appellant without objection on his part, that he had served a term in the penitentiary.

In any event, it is not clear that the impeaching testimony is shown to have been too remote. Appellant had served in the penitentiary until 1926. The trial in the present case was held in January, 1933. Whether one who is brought to trial for an offense alleged to have been committed within seven years after his release from the penitentiary would be in a position to successfully urge that the conviction for which he served his sentence was too remote is open to serious question. However, we deem it unnecessary to decide such question.

In passing, it is observed that this court has held that the period of time at which testimony of the character in question becomes too remote cannot be arbitrarily determined. Shipp v. State, 283 S. W., 520. Many circumstances may enter into the relevancy of such testimony. The period of life of the accused at which the discrediting act took place and his subsequent conduct are elements that must be taken into account. In Shipp v. State, supra, it was said that the nature of things

precludes a declaration by the court undertaking to fix arbitrarily and absolutely a space of time which would characterize testimony of the character in question as too remote. In course of the opinion the court said: "The receipt of such testimony should primarily be determined by the trial judge after an investigation, in the absence of the jury, to learn whether, under the ascertainable facts, the act is too remote. The exercise of such discretion is subject to review, and, in case of abuse, to be revised."

From what we have said, it follows that we are of the opinion that the bills of exception fail to reflect reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Whether in a given case in which the accused testifies in his own behalf the reception of evidence of his previous indictment or conviction of a felony is admissible, generally speaking, is not to be arbitrarily determined by the lapse of time alone but the intervening conduct of the accused is a pertinent subject of inquiry and often determines whether the proof is admissible or too remote. See Shipp v. State, 283 S. W., 520, and cases therein cited, including Ard v. State, 101 Texas Crim. Rep., 545, 276 S. W., 263. In the present instance, the appellant became a witness in his own behalf; and as shown in the original opinion, a controversy arose touching the admissibility of the previous conviction of the appellant.

From Bill of Exception No. 1, as understood, appellant's counsel, out of the presence of the jury, stated to the court that in September, 1921, appellant had been convicted of a felony and counsel for appellant claimed that proof of the previous conviction was inadmissible because it was too remote and requested the court to cause the state's attorney to refrain from bringing out the matter from the appellant while on cross-examination. When the jury was recalled appellant took the stand as a witness in his own behalf. In qualifying the bill, the court states that he instructed the District Attorney to refrain from making inquiry of the appellant touching his conviction in the year 1921, but gave his consent that inquiry might be made of the appellant touching his having been sentenced to the penitentiary in 1923.

In Bill No. 2 it is stated that it was brought out by the state that appellant had been convicted of a felony in 1921. However, this is controverted by the qualification of the bill by the trial judge wherein it is stated that the question asked by the District Attorney was as follows: "Isn't it a fact that on the third month, sixth day 1923 you were convicted and sentenced to serve life imprisonment from San Antonio?"

From the qualification it also appears that appellant answered, "No," and "explained his answer, as shown in the bill, which explanation," as understood, is as follows: "I will answer that 'No' with this reservation, sir: That I was sentenced previous to that, and that's when my sentence was commuted. I was sentenced to death in Sept. of 1921 and Governor Neff commuted my sentence to life imprisonment at that date, I think it is about the date,—one of the hardest governors, supposed to be, that the state ever had on crime."

The details of the conflicting views of counsel with reference to what is shown by the record are recited with more elaboration in the original opinion. However, as the contention is understood, it is claimed by the appellant that the state brought out the conviction of the appellant in 1921 in opposition to the ruling of the trial court in the discussion of the matter in the absence of the jury. The position of state's counsel is to the contrary. The court's qualification of the bill (against which there is addressed no exception by counsel for the appellant) apparently verifies the state's version. Under such circumstances, this court has no choice other than to treat the bill, as qualified, as reflecting the true facts. See Barnett v. State, 43 S. W. (2d) 449; La Fitte v. State, 54 S. W. (2d) 136. Nothing in the record indicates that the question which the court recognized as having been propounded by state's counsel related to a transaction shown by the evidence to have been inadmissible by reason of its remoteness. No circumstances leading to such conclusion have been perceived in the record. As the record is understood, appellant was convicted of murder in 1921 and the death penalty assessed. Thereafter, the Governor commuted the sentence to life imprisonment and the appellant remained in prison until his discharge in 1926. The present offense was committed in 1932. As stated above, the state attempted to eliminate the conviction of 1921. As we view the record, it is by no means clear that the state, for the purpose of affecting the credibility of the appellant as a witness in his own behalf, could not properly avail itself not only of the transaction of 1923 but that of 1921 as well.

In addition to his main charge the court gave to the jury

two special requested charges prepared by counsel for appellant. One of these charges contains the following: "Now, if you believe from the evidence that the deceased, Charles Peters, at the time of the difficulty had taken or was attempting to take and remove a certain house block from the foundation of the barn which the defendant was constructing, against the consent of said defendant, and after being warned by defendant not to take or remove said block, then the defendant would be justified in using all reasonable and necessary force to prevent the taking and removal of same by deceased. But he would not be authorized to take his life to prevent such unlawful taking or removal, without exhausting all other reasonable means to stop the deceased before resorting to the act of killing."

In another requested charge given the following appears: "You are charged, in connection with the Defendant's Special Requested Instruction No. 1, relating to the justification in taking the life of the deceased on account of his taking or attempting to take a certain house block, and also in connection with the general charge of the Court upon the law of self-defense, that if the acts of the deceased at the time he took the house block raised in the mind of the defendant a fear of serious bodily injury or death, the defendant had the right to take the life of the deceased. You are further instructed in this regard that should you believe from the evidence that the defendant drew his pistol and leveled it at the deceased after the deceased had taken possession of the house block and commanded him to drop the same, that the defendant in thus drawing his pistol was justified in so doing, if his only purpose thereby was to cause the deceased to desist from taking possession of the block. You are further instructed that should you believe from the evidence that the defendant leveled his pistol at the deceased for the purpose of making the deceased desist from removing the house block and keeping possession of the same unless the defendant would pay for the cypress log, and that after said pistol was so leveled at the deceased, the deceased threw the house block at the defendant and advanced toward him, and that if the defendant then took the life of the deceased in apprehension of suffering death or serious bodily harm at the hands of the deceased, or of Kobsell, then you will find the defendant 'not guilty.'

"In this connection you are further instructed that the defendant had the right to act under the facts then existing, as viewed from his own standpoint."

In the main charge the law of self-defense was elaborately, and so far as we are able to judge, accurately given to the jury.

From the paragraph of the charge submitting the issue of murder without malice the following is taken: "* * * but you do not find from all the facts and circumstances in evidence before you, that in such shooting, if any, the defendant, George W. Stephens, acted with his malice aforethought, or if you have a reasonable doubt thereof, then you will find the defendant, George W. Stephens, guilty of murder, and assess his punishment at confinement in the State penitentiary for any term of years not less than two nor more than five years."

Adverting to the criticism of the charge of the court in instructing the jury upon the subject of murder without malice, which criticism is found discussed in the original opinion, we feel constrained to adhere to the position advanced and stated in the original opinion upholding the action of the court. As a matter of contemporaneous history, as well as the expressions found in the act of the Legislature embraced in Chapter 274, Acts of the 40th Legislature, Regular Session, changing the offense of murder and abolishing the offense of mansaughter, it is manifest that the judicial conclusion or declaration that the offense of manslaughter still remained a part of the law of this state would be a perversion of the facts. Chapter 60, Acts of the 42nd Legislature, Regular Session, was not to re-enact the law of manslaughter but was intended to clarify the legislative meaning in the enactment of article 1257a as part of chapter 274, supra. Article 1257a, by its terms requires that in a prosecution of the offense established by chapter 274 (being article 1256), all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide may be considered by the jury in determining the punishment to be assessed. The amendment of chapter 274, appearing in chapter 60, Acts of the 42nd Legislature, serves to identify some of the relevant facts which should be received by the court and which, in a proper case, might be considered by the jury in reaching the conclusion that the accused acted with malice. Since the enactment of chapter 60, supra, known in the annotations as article 1257c, the court has, on various occasions, in express terms, rejected as unsound the contention that the provision had the effect of re-establishing the law of manslaughter either in effect or in substance. Among the cases may be mentioned Birchfield v. State, 60 S. W. (2d) 444.

The contention that the new murder statute, article 1257c, created two offenses,—one of murder and one of murder without malice—has been rejected in a number of opinions of this court. See Herrera v. State, 36 S. W. (2d) 515; Hunt v. State, 59 S. W. (2d) 836; Chappell v. State, 61 S. W. (2d) 842; Ex

parte Conway, 118 Texas Crim. Rep., 148, 37 S. W. (2d) 1017.

As stated in the original opinion, the special charge requested by the appellant did not properly interpret the legislative intent in enacting the part of the statute discussed above. The special charge is subject to the criticism that it tends to take away from the jury the decision of whether or not there was malice and to tell them that under certain circumstances there was no malice actuating the accused. The charge given by the court, which is quoted in the original opinion, while not in all particulars accurate, was not calculated to injure the rights of the accused. No exception was reserved to the main charge. Under such circumstances, the instruction would come within the purview of article 666, C. C. P., 1925, forbidding a reversal upon a charge of the court which, though not as full as might be desired, was not harmful.

The motion for rehearing is overruled.

*Overruled.*