EARNEST WILLIAMS V. THE STATE.

No. 23950. Delivered March 10, 1948.
Rehearing Denied April 28, 1948.

*Tom Gambrell,* of Lockhart, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was charged with the killing with malice of Callie Williams on or about August 25, 1946, and was by the jury awarded the penalty of death.

The testimony evidences the fact that appellant and the deceased had been husband and wife, each having been previously married and divorced. From the State's testimony, it can be gathered that on the night of the killing, which was on Sunday, the deceased had been attending church and came to her room about 11:00 o'clock; that she disrobed and prepared to retire; that she went into the yard of her place of abode to obtain some water; that while there she was attacked by appellant, who was concealed nearby, and was cut so severely that her death ensued immediately. The undertaker testified, among other things, as follows:

"These are the wounds that I found: A cut on the stomach above the nipple. A cut in the back from the right shoulder blade down to the waist, nine inches long, and two inches deep. A stab in the left shoulder two inches deep. A stab under the left breast, three inches deep, just below the heart. A cut above

the left breast, over the heart, five inches long and two inches deep. A cut inside the right hand, index finger almost completely cut off. Left hand cut across fingers flush with joint of the thumb, with first joint of thumb, left hand, completely missing. Throat cut from ear to ear,, both right and left jugular veins severed. Two incisions began right under left ear which finally fell in same channel, thence down the middle of the throat, there to the right ear, coming out on top of the right ear; throat completely cut open all the way back to the bone. The neck was cut clear around excepting three inches in the back. A cut in between the ribs. A cut above the right ear two inches long. The head could be lifted up, exposing the entire insides."

Appellant's defense was that of insanity which was submitted to the jury as substantiated by witnesses, and the careful trial court properly placed the burden of proof thereon upon appellant. The court also gave his instruction on a condition finding support in what lay witnesses testified as "moon" insanity, which savors much of epileptic seizures which, nevertheless, were allowed to him in the court's charge as grounds of an acquittal if it were shown by a preponderance of the evidence to be operating on appellant's mind at the time of the killing so as to exclude therefrom a knowledge of the right and wrong of the charged homicide. The court also gave a charge on temporary insanity and an irresistible impulse caused by a diseased condition of the mind.

Appellant was apprehended on the night on which this offense was committed, and on the following day he made a lengthly statement, occupying some eleven pages in the statement of facts, and no complaint was made relative to such confession. In conjunction therewith, he also directed the officers to where they discovered his bloody clothing as well as the knife with which the killing was accomplished.

The statement shows that appellant, a negro man 45 years of age, was married to a former wife, but divorced from her; that at the time of the killing he was married to the deceased; that they were separated and living apart; that he and deceased had their quarrels and she had moved away from his home about a month before the homicide. He tried to talk to her over the telephone but she refused to talk to him. On the night in question he decided to go to the house where the deceased was living and talk to her. He took with him, among other things, a "brown-handled knife with three blades in it, and the knife with the long blade open was about eight or nine inches long." He

got under some trees in the yard and waited about 45 minutes. While there, the deceased came along and walked by the trees. She did not see him and he said nothing to her. When he came around to the side of the house, she came out thereof and poured something out of a cup or glass. He then stepped towards her and called her by name and she asked, "Who is that?" He told her his name. She then told him that she was through with him, applying to him a very insulting and opprobrious epithet, and started into the house. This epithet made him mad and he rushed on her. He followed her and she closed the door on his finger. He pushed on the door and she endeavored to hold it, but he finally got it open. The deceased ran into the house and into another room, and he tried to talk to her. The narrative stops just at this point and again takes up as follows: "When I went out Callie (deceased) was on the floor by the old woman's bed. When I got off from Callie she turned over on her side. I don't know how many times I cut her and it might have been five or six times more. Callie didn't have any knife or anything on her at the time of the cutting."

These are the salient facts of this tragedy as shown by appellant's uncontradicted statement, and therein appears but one point upon which a reversal is requested. According to this statement, just previous to appellant's cutting of deceased, she applied to him an obscene and opprobrious epithet which is made the basis of a special requested charge which was refused by the trial court. The charge requested would have been applicable to the offense of murder without malice, and would have been based on the use of such epithet upon the part of the deceased and applied to appellant at the time his statement says, "it made him mad." The charge requested reads as follows:

"Gentlemen of the Jury: You are instructed that if you find from the evidence, or if you have a reasonable doubt thereof, that the words spoken by the deceased to defendant, or acts committed by deceased toward defendant, provoked defendant to attack deceased and rendered the mind of defendant to such degree of anger and rage as that at the time he could not control his acts, and that as a result of same, defendant killed deceased by cutting her with a knife, then you are instructed that you cannot find the defendant guilty of killing deceased with malice aforethought and you will acquit him of killing with malice, even though you may find him guilty of some other offense."

Under Article 1143, P. C., "no verbal provocation justifies an assault and battery, but insulting and abusive words may

be given in mitigation of the punishment affixed to the offense."

After setting forth the law defining "adequate cause" the court applied such law in a comprehensive instruction on murder without malice, and among other things, told the jury that if appellant was laboring under the immediate influence of a sudden passion such as anger, rage, resentment or terror which rendered his mind incapable of cool reflection and that such condition of mind, if any, was brought about by circumstances or conditions which would have commonly produced such a state of mind in a person of ordinary temper, or if they had a reasonable doubt thereof, then they should find appellant guilty of murder without malice and assess the proper penalty.

Appellant contends that he was entitled to an instruction as to whether the epithet testified to by him in his statement was such as would be deemed "adequate cause" as defined in the excerpt from the charge above set forth.

We are cited to the case of Elsmore v. State, 132 Tex. Cr. R. 261, 104 S. W. (2d) 493, as authority for the proposition that on account of the repeal of the manslaughter statute and also of the corollary statute setting forth what shall not constitute adequate cause, then "adequate cause" is anything that might cause a person of ordinary temper to become incapable of cool reflection. While this proposition may be sound, still it could only mean that if any facts be presented in the trial bearing on the question of adequate cause, there would then arise a necessity for charging on murder without malice, but surely the duty would not devolve upon the trial court to say that if they believed the deceased uttered certain language to and concerning the accused, such language or acts would constitute adequate cause.

We held in Duncan v. State, 138 Tex. Cr. R. 537, 137 S. W. (2d) 781, that since the repeal of the manslaughter statute, it is no longer proper for the court to instruct the jury as to particular acts constituting adequate cause.

We said in Moseley v. State, 149 Texas Crim. Rep. 523, 196 S. W. (2d) 822 (826), as follows:

"Art. 1257c, P. C., governs the submission of the question of murder without malice. A compliance therewith by a trial court is all that is required. For a trial court now to pick out any particular fact or set of facts in the evidence and instruct

the jury that if they believed such fact or facts the killing would—as a matter of law—be one without malice, would of necessity constitute a charge upon the weight of the evidence."

In other words, such an act upon the part of· the trial court would be equivalent to such court telling the jury that such fact would render the mind of an ordinary person incapable of cool reflection and therefore be adequate cause.

An instruction that abusive language might constitute adequate cause was not called for where the trial court instructed the jury as set forth in Art. 1257c, P .C. See Threadgill v. State, 124 Tex. Cr. R. 287, 61 S. W. (2d) 821.

Since the repeal of the statutes defining manslaughter, the court is not required to define the term "adequate cause" other than as same is defined in Chapter 60, Acts of 42nd Legislature, Regular Sessions, (Vernon's Ann. Tex. P. C. Art. 1257c.) See Birchfield v. State, 124 Tex. Cr. R. 8, 60 S. W. (2d) 444; Stephens v. State, 125 Tex. Cr. R. 397, 68 S. W. (2d) 181; Crabtree v. State, 137 Tex. Cr. R. 63, 127 S. W. (2d) 906; Hettich v. State, 130 Tex. Cr. R. 580, 95 S. W. (2d) 113; Stephens v. State, 145 Tex. Cr. R. 100, 165 S. W. (2d) 721; Stapp v. State, 140 Tex. Cr. R. 669, 147 S. W. (2d) 256; Witty v. State, 150 Tex. Crim. Rep. 555, 203 S. W. (2d) 212; Rodriguez v. State, 150 Tex. Crim. Rep. 526, 202 S. W. (2d) 940.

Prior to the repeal of the manslaughter clause in the statutes, certain things were enumerated as not constituting adequate cause; and again, certain acts, conditions and circumstances as would constitute adequate cause were set forth. See Arts. 1245, et seq., 1925 Revision of the Penal Code. The repeal of all these articles constituting Chapter 15, Title 15, P. C., renders nugatory all such articles, and we find ourselves operating under Art. 1257c, Vernon's Ann. P. C., under which article anything might operate as an adequate cause that the jury might find, they not being restricted to those matters mentioned in the old repealed statute. To that extent, at least, the law seems to be more liberal as it now exists than it appeared to be under the repealed statute.

In the instant case, the requested charge was not based upon any acts shown in the record upon the part of the deceased. All the acts attributed to her in the testimony were that she fled, attempted to close the door and screamed, "Murder, murder, come here somebody, Lord have mercy." The epithet that ap-

pellant claimed she applied to him was the only matter that appears to be offered as constituting adequate cause. Under the repealed law, this would not have been sufficient to have been the basis of a charge on murder without malice as constituting adequate cause. See old Art. 1247, P. C. Under the present statute, we think the trial court was correct in submitting the question of murder without malice and adequate cause in the manner herein shown, as set forth in the court's charge. According to his own statement, appellant was lying in wait for the deceased, and in the attack, remarkable for its ferocity, he inflicted upon her body many mortal wounds from which she died immediately, and we think the jury were well within the law when they exacted from him the extreme pealty of death.

Finding no error in the record, the judgment of the trial court will be affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant again urges that the trial court was in error in refusing to give to the jury his requested charge which is copied in our original opinion to which reference is here made without again setting it out.

Stripping the charge down to the essentials it would have told the jury if the words or acts of deceased made appellant so angry that he could not control his acts, and he killed under those circumstances he would not be guilty of murder with malice.

Art. 1257c, Vernon's Ann, Tex. P. C., Vol. 2, p. 765, Acts 42nd Leg., p. 94, Ch. 60, defines murder without malice as a killing under the immediate influence of sudden passion arising from an adequate cause, "by which is meant such cause as would *commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection.*" (Italics ours.) It will be observed that the requested charge entirely ignored that part of the statute above italicised, and would have directed an acquittal of murder with malice if the words or acts of deceased made appellant angry, regardless of whether they would have so affected a person of ordinary temper. The requested charge was properly refused. The court in his main charge instructed

the jury in accord with the statute referred to above. This was all appellant was entitled to on the subject.

The motion for rehearing is overruled.