## W. P. STEPHENS V. THE STATE.

No. 22199. Delivered October 21, 1942.
Rehearing Denied November 25, 1942.

The opinion states the case.

*Marshall & King,* of Graham, and *Sam B. Spence* and *Ralph Dickson,* both of Wichita Falls, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin ,for the State.

KRUEGER, Judge.

The conviction is for murder. The punishment assessed is confinement in the State penitentiary for a term of eight years.

The record shows that appellant and deceased were brothers; that they owned adjoining farms; that appellant's land was located north of the deceased's farm; that a controversy arose between them as to where the dividing line between their respective farms was located. Appellant contended that it was where an old fence stood while the deceased claimed that it

was located about 10 or 12 feet further north where there was some evidence of a fence having stood at some former time. On the day of the unfortunate tragedy, the appellant and Mr. Steele went to build a new fence. They had driven some stakes along the old fence line where Steel was to build it. The deceased came there with tools to construct a fence where he contended the true dividing line was and began to dig post holes. A heated argument ensued which culminated in the shooting of the deceased by appellant. An examination of the body of the deceased disclosed three bullet wounds in the back: one on each side of the spine and the third in the fleshy part of the hip.

Appellant brings forward a number of complaints, some of which relate to the admission of evidence, while others relate to the court's charge and to the action of the court in declining to submit special requested charges.

Bill of Exception No. 1 reflects the following occurrence: While Norman Steele was testifying for the State, he was asked the following questions by the District Attorney and made the following replies:

"Q. What did the defendant do now after his brother, Wiley Stephens, fell on the ground on his side? A. Well, after he first started firing, he fired until after he fell, and fired the last shot after he fell.

"Q. Fired the last shot when? A. After he fell.

"Q. You mean after he fell on the ground he fired a shot? A. Yes, sir."

According to the bill, during the course of the examination of said witness the District Attorney made a gesture with his hand and body, demonstrating before the jury by bending his body toward the floor with his right hand and a flattening motion toward the floor, thus indicating an expression of surprise. Appellant objected to this procedure on the ground that it was an exclamation and gesture by counsel in an effort to inflame the jury, and was done for the purpose of prejudicing the jury against him. The court sustained the objection and instructed the jury not to consider the same, but notwithstanding the court's ruling and instruction, appellant excepted. We do not believe that this bill reflects any error in view of the court's prompt action thereon.

Bill of Exception No. 2 complains of the testimony given by Elton Stephens, son of the deceased, who testified on direct examination, as follows:

"Q. Also in 1937 I heard a conversation between my father and my uncle about this fence. In that conversation my uncle told my father he would settle the dispute this way; he said, 'I will see you in a black box before I will see it go that way'."

On cross-examination the witness testified:

"Q. How come you to tell the jury and get the idea about what your uncle, Doc Stephens, (defendant) had told about the black box? A. You don't get the point there.

"Q. The point is, you say it is some years later that your uncle told your father that one or the other would be taken? A. This is on a different matter in 1937."

Thereupon appellant objected to his testimony given by the witness on direct examination on the ground that it appeared from the cross-examination that such testimony was immaterial, irrelevant and highly prejudicial. The court sustained the objection, ordered such testimony stricken, and instructed the jury not to consider the same for any purpose. We see no error reflected by the bill and the same is overruled.

By Bill of Exception No. 3 appellant complains of the testimony given by the wife of the deceased to the effect that when appellant returned from the scene of the difficulty he passed by her home but did not stop or say anything; that he went out to his place. Appellant objected thereto on the ground that it was immaterial, irrelevant and prejudicial. We perceive no prejudicial error reflected by the bill such as would require a reversal of the case. The record shows that when appellant went to the fence line in dispute he came by the home of the deceased, and that he stopped and conversed with the deceased relative to the building of a new fence.

By Bill of Exception No. 4 it is shown that the defendant offered to introduce in evidence certain exhibits to which the State objected, but the bill fails to disclose the ruling of the court thereon, in the absence of such a showing we are unable to determine whether the court overruled or sustained the State's objection. Hence the bill is insufficient to show any error.

Appellant addressed a number of objections to the court's charge. The first relates to the court's instruction on the law of murder with malice aforethought. He contends that the facts in the case fail to raise such an issue; that only the issue of murder without malice is raised by the evidence. We cannot agree with appellant in his contention. Malice is the condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from the acts committed or words spoken. That appellant acted with malice is shown by his own testimony relating to his acts, words and conduct at the time of the killing. Under our present statute, the question of the appellant's state of mind is a question solely for the determination by the jury from all the facts and circumstances surrounding the killing. Prior to the enactment of the present murder statute, we had a manslaughter statute which enumerated certains acts as constituting adequate cause and when the uncontroverted evidence showed that adequate cause existed at the time of the killing, it was proper for the trial court to only submit to the jury for their consideration whether or not appellant was guilty of manslaughter. But when the present murder statute was enacted, the manslaughter statute was repealed, and now the question of whether or not adequate cause existed, by which is meant such a cause as would commonly produce in a person of ordinary temper that degree of anger, rage, sudden resentment or terror as to render his mind incapable of cool reflection, is not to be determined by the court but by the jury alone.

Appellant next complains of the court's charge because the court failed to instruct the jury on the law of self-defense. If this issue had been raised by any evidence appellant would have been entitled to an instruction thereon, and the careful trial court would, no doubt, have given an instruction on the subject, but the issue was not raised. Mr. Steele, who was employed by appellant and who was present at the time the fatal shots were fired, testified:

"At the time the defendant shot the deceased, the deceased had his post-hole digger and was digging a hole. He did not have the post-hole digger up in place as if to strike. I did not at any time see the deceased pull or threaten to pull this hammer on the defendant. * * * The deceased was looking at the defendant with the gun when he said, 'Doc, Doc, don't do that,' He said this when the defendant was coming towards him with

the pistol. When the deceased said, 'Doc, Doc, don't do that,' the defendant started firing. When the first shot was fired, the deceased turned and ran away. The defendant kept firing. The deceased had nothing in his hands; he was running away from defendant."

Appellant, among other things, testified:

"Wiley told me if I wanted a fence I could build one. When he said that it went all over me. * * * I just lost my head entirely. Well, I shot him because he would not leave. * * * I couldn't get him off my premises. * . * * Before I shot him, I did not tell him that I was going to kill him if he didn't get off. I lost control of myself when he told me he wouldn't help me build the fence. * * * I didn't exercise any other means of getting him off my land at the time, and didn't have any other means of doing it except to shoot him. When I first shot he was facing me; then he turned and was going from me, going in the direction of his property. * * * When he was going towards his property I continued to shoot him."

How is the issue of self-defense raised? We fail to see it.

Appellant requested a number of special charges on the legal right of a person to expel a trespasser. The court gave a very comprehensive and most favorable charge on the subject.

Appellant next complains of the action of the trial court in declining to submit to the jury his special requested instruction defining possession of real estate, coupled with an instruction of his legal right to eject a trespasser by first resorting to all other means at his command to accomplish that object before he had a right to kill. Looking to the court's charge, we find that in Paragraph 12 thereof, the court gave an instruction in substance, though not in the same words, as the one requested. He contends that the court required the jury to believe from the evidence that defendant's possession was right in its nature before he would be entitled to defend his possession. Looking to appellant's requested charge, we find that it contains the following language:

"And you are further instructed that if you find and believe from the evidence that the defendant had the right and lawful possession of the strip of land in controversy, that the question of title to said land would not be material, etc."

. It will be noted that by the requested instruction the jury was told that if they believed from the evidence that the defendant had the right and lawful possession of the strip of land in controversy that he had the same right in law to defend his possession thereof the same as if he were the real owner, etc. That appellant was in possession of the strip of land in controversy was specifically admitted by the State, and there really was no need to submit said issue to the jury. However, since appellant, in his requested instruction embraced that issue and thereby invited the error, he will not be permitted to complain. Appellant made no objection to the court's charge specifically pointing out the error now complained of as required by Art. 658, C. C. P.

All other matters complained of have been considered and are overruled.

From what we have said it follows that the judgment of the trial court should be affirmed, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

On his motion for rehearing, appellant complains of the action of this Court in not sustaining his bill of exception number one. The original opinion states the facts on the question presented as fully as the record will warrant. In all probability a very novel, and no doubt unnecessary, acrobatic and facial demonstation was performed, the harmful effect of which would not easily be presented to this Court. In such event only the trial court would have an opportunity to pass on it. We are by no means endorsing the conduct of the district attorney as proper. We are only saying that as presented to us we are unable to say that the trial court committed error in his ruling. The cautious trial judge sustained objections at the time and gave the jury the only instruction which appears to have been appropriate. It further appears that he did everything requested of him, after which the defendant then and there excepted to the conduct of the district attorney "notwithstanding the court's

instructions for the reason * * *." The bill does not show any further request of the court than that which had been granted. There was no request to declare a mistrial or for any further action in the matter whatsoever. We think the original opinion correctly disposes of this bill.

Appellant further complains of the action of this Court in refusing to sustain "assignments of error" numbers one and two. Often it has been repeated that questions are not raised in this Court by assignments of error. The lengthy discussion in the motion following this complaint admits the failure of appellant to timely raise objections to the procedure here involved and argues that the matters are of sufficient importance or that they are of a nature which should be considered without such timely objections brought forward by bills according to rules. Fundamental matters may be considered by us when presented for the first time on appeal but the question of their importance to appellant does not decree them to be fundamental. We find nothing fundamental for our consideration, neither do we think that the requested charge presented a matter which should have been given attention. The original opinion amply discusses all the questions in connection with the case.

The motion for rehearing is overruled.