MERLE WAYNE ELLISOR V. STATE

No. 27,645. June 22, 1955
Motion for Rehearing Denied
(Without Written Opinion) October 19, 1955

*Cain & Chessher,* Liberty, *Tom Sanders,* and *Joe J. Newman,* Houston, for appellant.

*Dan Walton,* District Attorney, *Eugene Brady* and *Thomas D. White,* Assistants District Attorney, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, death.

There is no conflict in the evidence except as to the sanity of the accused. In view of this, the state's evidence will be summarized. The appellant, who had only a short time before the homicide been released from the Texas Prison System and who had just shot Deputy Sheriff Scarbrough, shot and killed Officer Crosby, a member of the Highway Patrol as Crosby attempted

to apprehend him for speeding. Appellant's confession was admitted, and no evidence was introduced tending to show that it was involuntary. The appellant did not testify, and the sole defense was that of insanity. There were expert and lay witnesses on the question of sanity for the state and for the appellant, and the jury resolved the conflict in such testimony.

The facts will be stated more fully in a discussion of the bills of exception which are advanced in the brief and argument of appellant's able attorney.

Formal Bills Nos. 3 and 4 and Informal Bill No. 19 relate to refusal of the court to allow the appellant to withdraw his announcement of ready when each of three witnesses for the state was called in development of the state's case in chief. The bills, as qualified, reflect that prior to the trial the appellant filed a motion to require the state to furnish appellant's counsel with a list of the witnesses, but the appellant secured no ruling from the court on such motion. At the time such motion was filed, the attorney representing the state delivered to appellant's counsel a list of 38 names as state's witnesses, but the names of neither of the three witnesses in question was on such list. When each of the three witnesses was called to testify, the appellant plead surprise and asked to withdraw his announcement, which request was denied.

In discussing the question here presented, it is important to bear in mind the statement of the case contained in the second paragraph of this opinion and the nature of the testimony of the witnesses in question.

The witness Phillips testified that he had prepared certain plats and drawings of the scene of the homicide.

The witness Palermo testified that he found a pistol near the scene of the homicide and delivered it to a policeman.

Officer Higgins testified that Palermo delivered the pistol to him.

Officer Crosby was killed by volleys from a shotgun and a rifle, both of which were found at the scene of the homicide. Appellant's confession recites that as he was escaping from the scene he "discovered that I still had the pistol in my belt. I decided it best to get rid of the pistol so I threw it away."

The state's case was complete without the testimony of these three witnesses, and they did not testify as to any controverted issue. In view of the failure of the appellant to press for a ruling on his motion, we would not be inclined to reverse a conviction unless the appellant was able to show injury. We see no possibility of injury or surprise to the appellant here. We note that all the cases which discuss Article 392, V.A.C.C.P.; hold that the provision concerning the endorsement of witnesses on the indictment is directory and not mandatory.

Formal Bill No. 5 relates to the testimony of Officer Scarbrough. The appellant's objection was that it constituted proof of an extraneous offense. A few minutes prior to the homicide herein charged and approximately one mile from the scene thereof, Officer Scarbrough attempted to apprehend the appellant for reckless driving and was shot in the shoulder by the appellant, who then drove away in great haste toward the spot where he killed Crosby. Scarbrough shot at the appellant as he fled.

We think that the evidence was clearly admissible as bearing on the intent with which the appellant fired at Crosby. He had just finished shooting Officer Scarbrough and was fleeing from the scene when Crosby attempted to arrest him. We think that it is logically deducible from these facts that appellant shot Crosby in order to avoid being arrested for the Scarbrough shooting or for the same reason that he shot at Scarborough.

A number of bills were reserved to the action of the court in permitting witnesses to testify and allowing a portion of the confession to be introduced, both of which showed that some two days before the homicide the appellant had burglarized a tourist court and had stolen the guns which he used to kill Officer Crosby and the money which was found on his person at the time he was apprehended. The fruits of the burglary were in the possession of the appellant at the time Officer Crosby gave chase; the appellant knew that they were stolen and that if Officer Crosby was successful in arresting him and found them he would probably be held accountable for their theft. We think that the evidence relating to the burglary was admissible on the issue of the appellant's intent at the time he shot Crosby.

Appellant relies upon the recent case of Dempsey v. State, 159 Texas Cr. Rep. 602, 266 S.W. 2d 877. The decision in the Dempsey case gives application to Article 732a, V.A.C.C.P., which provides that *collateral* acts of misconduct which have not

culminated in a conviction are inadmissible for the purpose of impeachment. The possession of recently stolen property while fleeing from an officer was not offered for impeachment purposes, but on the issue of intent and to show malice.

Without the proof of the presence of stolen property in appellant's automobile and without the proof as to the shooting of Scarborough, the jury would have had no evidence as to the appellant's intent when he shot Crosby. Without such evidence, they might have concluded, as the appellant asked them to, that the shooting of an officer in order to avoid receiving a speeding ticket was the act of an insane man.

Appellant relies upon Martinez v. State, 138 Texas Cr. Rep. 51, 134 S.W. 2d 276. In that case, this court reversed a conviction for possession of marihuana because the court permitted the prosecutor to read the accused's entire confession, which, in addition to relating the facts about the marihuana, contained the following recitation, "I have been to the Texas Penitentiary twice. Both times for burglary." We think the distinction between the Martinez case and the case at bar is clear. The burglary terms which the accused may have served had no connection with the marihuana case, while in the case at bar the appellant was resisting arrest and fleeing from the scene of an assault upon an officer while he had stolen property in his possession.

Appellant next complains of failure of the court to postpone the trial of this case because one of his attorneys was engaged in the trial of a civil case. We find no motion for continuance in the record, but we do observe that appellant was represented by a member of the firm whose ability is well recognized by this court.

Appellant complains of the failure of the court to charge on murder without malice. He contends that the evidence that Officer Scarborough fired several shots at the appellant as he drove away raised the issue that the killing of Officer Crosby was without malice. The evidence shows that Officer Scarborough was in uniform and riding a clearly marked police motorcycle. Even if the appellant had thought that Crosby was Scarborough, we fail to see how this fact would have in anywise mitigated the killing.

Finding no reversible error, the judgment of the trial court is affirmed.

DAVIDSON, Judge dissenting.

I cannot agree to the affirmance of this case. I respectfully enter my dissent.

I have reached the definite conclusion that the testimony showing the prior acts of misconduct and violations of the law on the part of the appellant was not admissible and that Dempsey v. State, 159 Texas Cr. R. 602, 266 S.W. 2d 875, is authority for that conclusion.

I am also convinced that the testimony of the witness Scarborough regarding his attempted arrest of the appellant, the difficulty that ensued, and the exchange of shots was not admissible. On the other hand, if Scarborough's testimony was to be admitted and remain with the jury, then the charge upon murder without malice should have been given.

Scarborough's testimony was sufficient to raise the issue of a killing without malice in that it showed the attempted arrest and the difficulty which ensued, including the exchange of shots in which appellant was wounded by a shot from Scarborough's gun — all happening just prior to the meeting with the deceased, who was also a peace officer attempting to arrest the appellant.

The trial court should have responded to appellant's request that such issue be submitted to the jury.

It must be remembered that there is no set formulae or state of facts by which it may be said that the issue of murder without malice is or is not presented. All that the statute (Art. 1257c, Vernon's P.C.) requires is that there be enough facts to present the issue that the killing occurred under the immediate influence of a sudden passion arising from an adequate cause, by which is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection.

To sustain the action of the trial court in refusing to submit murder without malice, we must conclude that, as a matter of law, there are no facts in evidence which would authorize a jury to conclude that the mind of the appellant was incapable of cool reflection when he killed the deceased. Crabtree v. State, 137

Texas Cr. R. 63, 127 S.W. 2d 906; Stephens v. State, 145 Texas Cr. R. 100, 165 S.W. 2d 721.

I am of the opinion that the issue was raised by Scarborough's testimony showing the attempted arrest, the difficulty which followed, and the ensuing shooting in which appellant, himself, was seriously wounded — all occurring just a short time before the killing.