**Matter of Petition of Merle Wayne ELLISOR, for the Writ of Habeas Corpus.**

**Civ. A. No. 9427.**

United States District Court
S. D. Texas, Houston Division.

April 4, 1956.

C. C. Chessher and Chap B. Cain, Liberty, Tex., and Tom H. Sanders and Joe J. Newman, Houston, Tex., for petitioner.

John Ben Shepperd, Atty. Gen. of Texas, and John A. Wild, Asst. Atty. Gen. of Texas, for respondent.

Dan Walton, Dist. Atty. of Harris County, and Eugene Brady, Asst. Dist. Atty. of Harris County, Houston, Tex., amici curiæ.

KENNERLY, District Judge.

This case arises under and presents questions under the Fourteenth Amendment to the Constitution of the United States, particularly the due process clause of such amendment. Convicted of murder and given the death penalty in the Criminal District Court of Harris County, Texas, Merle Wayne Ellisor (for brevity called Ellisor) was by such court, on the *28th day of October 1955*, sentenced to be executed on *December 3, 1955*. The execution, by State authority, was postponed and delayed so that the final date of execution was fixed for *January 12, 1956*. On *January 11, 1956*, E. M. Ellisor, the father of Ellisor (for brevity called Petitioner), presented to this court on Ellisor's behalf a petition for the Writ of Habeas Corpus, based on two complaints:

(a) It was alleged that Ellisor was insane at the time he was sentenced and at the time of filing such petition.

(b) It was alleged also that Ellisor's attorneys were not notified of the time and place of sentence and were not present, and he was not represented by any counsel when sentenced.

There was no complaint with respect to any other proceeding in the case. An order to show cause was entered, as provided in Section 2243, Title 28 U.S.C.A., and the execution of the death sentence was stayed until the matter could be heard. Thereafter such petition was amended, and as in the Original Petition it is claimed that Ellisor was insane when sentenced. It is also claimed that his attorneys were not notified of the time and place of sentence, and that he was not represented by counsel when sentenced. It is also claimed that Ellisor was insane at the time of filing such Amended Petition. There is no complaint with respect to any proceedings in the case other than the sentence.

After such Amended Petition was filed, the State of Texas and O. B. Ellis, the General Manager of the Texas Prison System, answered, many of the facts were stipulated, briefs were filed, etc.

This is a hearing on the merits, with Ellisor and his father, E. M. Ellisor, present in person and both represented by counsel. The State was represented at the hearing by an Assistant Attorney General of Texas and an Assistant District Attorney of Harris County, Texas.

The parties have stipulated some of the facts as follows:

(a) Merle Wayne Ellisor, hereinafter called defendant, was on December 8, 1954, charged by indictment with murder with malice.

(b) On January 11, 1955, the defendant was arraigned, and entered a plea of not guilty.

(c) The case against Merle Wayne Ellisor proceeded to trial in Criminal District Court of Harris County, Texas, Judge E. B. Duggan, presiding, on January 11, 1955.

(d) The defendant Merle Wayne Ellisor interposed the defense of insanity as of the date of the commission of the offense charged and as of the time of trial, and such defense was raised and presented to the jury upon the trial of the case.

(e) The jury found against the defendant on the issue of insanity and on January 13, 1955, returned into open court its verdict finding defendant guilty of murder and assessing the death penalty.

(f) On January 22, 1955, defendant's counsel filed motion for new trial in the trial court. After hearing thereon said motion for new trial was overruled by the court on January 31, 1955, and defendant thereupon gave notice of appeal to the Court of Criminal Appeals of Texas, at Austin, Texas.

(g) The defendant was represented at every stage of the proceedings of his trial and appeal by Joe J. Newman, Tom Sanders, C. C. Chessher and Chap B. Cain, attorneys at law, except that none of said attorneys were present at the time sentence was pronounced. Defendant's attorneys were not notified of the time and place that sentence would be pronounced upon defendant and had they been so notified they were available and would have been present at the time of pronouncement of sentence.

(h) The Court of Criminal Appeals of Texas, after hearing and considering defendant's appeal affirmed the judgment of the trial court [Ellisor v. State, Tex. Cr.App., 282 S.W.2d 393] and issued its mandate to the trial court, such mandate being received by the trial court on the 24th day of October, 1955.

(i) Subsequent to the return of this mandate defendant was sentenced by the trial court on October 28, 1955. Prior to the pronouncement of sentence the trial court asked defendant whether he (defendant) had anything to say why sentence should not be pronounced against him. Defendant answered nothing in bar thereof.

(j) Both the applicant, E. M. Ellisor, and Merle Wayne Ellisor are citizens of the United States. E. M. Ellisor is the father of Merle Wayne Ellisor.

(k) O. B. Ellis, respondent herein, is General Manager of the Texas Prison System.

(l) Merle Wayne Ellisor at all times subsequent to his conviction on January 13, 1955, was continuously confined in the Harris County jail until such time as he was removed to the Texas penitentiary pursuant to the sentence pronounced on October 28, 1955.

(m) Defendant Merle Wayne Ellisor was brought from the Harris County jail to the Criminal District Court of Harris County, Texas, at the time he was sentenced by deputy sheriffs of Harris County.

(n). Defendant is now held in confinement by respondent by authority of the judgment, sentence, mandate and warrant, true copies of which are attached to respondent's answer herein, and as directed thereby he will be executed by or under the direction of respondent unless respondent is prevented from so doing by this Court or by a pardon issued by proper authority.

(o) The defendant Merle Wayne Ellisor has not received a pardon from proper authorities nor did he at any time subsequent to conviction and before sentence, escape from custody.

(p) By virtue of the sentence and warrant defendant was to have been executed on December 3, 1955. He received a stay of execution from executive authority until January 12, 1956. This Court on January 11, 1956, issued a further stay pending disposition of this petition for writ of habeas corpus.

(q) Prior to the time that this application was presented to the United States District Judge T. M. Kennerly, defendant presented to the trial court, the Criminal District Court of Harris County, Texas, and to the Court of Criminal

Appeals of Texas, applications for writ of habeas corpus. Copies of each of these applications, together with the order of the respective courts thereon, are attached to the applicant's petition as exhibits thereto.

(r) Neither the defendant, nor anyone acting in his behalf, has ever been prevented from having examinations made of defendant by physicians or psychiatrists for the purpose of determining whether the defendant has become insane since January 13, 1956.

(s) Neither Merle Wayne Ellisor nor anyone acting in his behalf has filed in the trial court any affidavit raising the issue of insanity after conviction, complying with Art. 921 or 922 of the Code of Criminal Procedure of Texas, Vernon's Ann.C.C.P.

The parties have also stipulated as follows:

(t) It is agreed by and between the Applicant and Respondent in the above entitled case that in addition to the facts which have before been agreed to regarding the issues in this matter, both the Applicant and Respondent further stipulate and agree that only one hearing or submission shall be necessary; that the entire matter may be presented to the Court at one time.

(u) It will be observed that while it is stipulated that Ellisor's counsel were not notified and were not present at the time he was sentenced, it is not stipulated whether he was or was not insane at the time, and at the time of filing such petitions. These issues are, therefore, left to be determined by the Court.

The evidence on these issues of insanity is very meager. Although E. M. Ellisor, the father of Ellisor, who instituted this proceeding, was present in court, he did not take the witness stand to affirm either that Ellisor, his son, was insane at the time he was sentenced nor at the time of the filing of his Original and Amended Petitions herein. Ellisor, who was also present in court, was not called as a witness. The State called neither E. M. Ellisor nor Ellisor as a witness. No other witnesses were offered by either party on such issues. The sole and only evidence before the Court on these issues are the inferences that may be drawn from the Record. I find Ellisor to have been sane at the time he was sentenced and at the time of the filing of Petitioner's Original and Amended Petitions.

(v) Other facts may be stated in the discussion.

■ 1. Jurisdiction here under Section 2241, Title 28 U.S.C.A., is shown by the pleadings. The Stipulations show a sufficient compliance with Section 2254, Title 28 U.S.C.A.[1] Since the finding is that Ellisor was not insane either at the time he was sentenced, or at the time the Petition and Amended Petition for the Writ of Habeas Corpus were filed herein, Article 921 et seq., of the Texas Code of Criminal Procedure cited by the State are not applicable.

■ 2. Because of the allegations of insanity contained in the Petition and Amended Petition filed herein, and also because of the allegations therein that Ellisor was sentenced without notice to his Counsel and without being represented by Counsel, it is plain that the order of January 11, 1956, of this Court to show cause and staying the execution of Ellisor were proper, and the objections of the State are not well taken. Chand-

[1]. See Paragraph (q) herein, where it is stipulated that Ellisor presented to both the Criminal District Court of Harris County and to the Court of Criminal Appeals of Texas petitions for the Writ of Habeas Corpus. With respect to the finality of the action of the Court of Criminal Appeals therein the State says in its brief:

"Therefore, the fact that the Court of Criminal Appeals denied leave to Petitioner herein to file an application for writ of habeas corpus in this case must of necessity be a holding of the highest Court of this State having appellate jurisdiction in criminal cases that Petitioner was not denied counsel and was not deprived of 'due process' merely by reason of his counsel not being present at the time sentence was pronounced against him."

ler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4; Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135; Atkins v. Moore, 5 Cir., 218 F.2d 637; Henley v. Ellis, 5 Cir., 228 F.2d 657.

■ .3. Since after a hearing the finding now is that Ellisor was not insane either at the time he was ·sentenced or at the time of the filing herein of the Petition and Amended Petition, it follows that the objections of the State to the part of Petitioner's case which is based upon the claim of insanity on those dates is well taken and is sustained.

4. But the part of Petitioner's case based upon the undisputed fact that Ellisor was sentenced without notice to his Counsel and without being represented by Counsel is a different matter.

■ The Stipulations hereinbefore quoted and the certificate of the trial Judge filed herein under Section 2245, Title 28 U.S.C.A.[2] and the copy of the sentence filed here show that the Man-

2. The certificate of the trial Judge is as follows:

"I, E. B. Duggan, Judge of the Criminal District Court of Harris County, Texas, certify that I was the Judge presiding in said Court throughout the trial and sentence of Merle Wayne Ellisor.

"Ellisor was tried for the offense of murder of a Texas Highway Patrolman. Upon such trial the defendant raised the issue of insanity and evidence was heard by the jury upon such issue which was fully developed by both the State and the Defendant.

"The jury found that Defendant was sane at the time of the commission of the offense and at the time of trial and assessed the death penalty.

"The Defendant was represented at the trial by counsel of his choosing, Mr. Joe J. Newman and Mr. Tom Sanders. Mr. C. C. Chessher and Mr. Chap B. Cain did not personally appear in the case at the trial and took no part in the proceedings.

"In due course a motion for new trial was filed in behalf of Ellisor and after hearing such motion was overruled. Defendant timely excepted and gave notice of appeal to the Court of Criminal Appeals of Texas. The Court of Criminal Appeals of Texas affirmed the judgment of the· trial court in a written opinion, Ellisor v. State, 282 S.W.2d 393.

"Thereafter the Court of Criminal Appeals issued its Mandate to this court. Such Mandate was received by the Clerk of this court on October 24, 1955. Thereafter on October 28, 1955, the said Merle Wayne Ellisor was brought into open court in custody of the Sheriff for the purpose of being sentenced in accordance with the Mandate of the Court of Criminal Appeals of Texas.

"The court asked ·the defendant at such time ·in ʼopen court if he had any reason to state why sentence should not be pronounced against him as provided by law. To this question the Defendant answered in the negative, and the court thereupon proceeded to pronounce sentence against him.

"At the time sentence was pronounced it was known to the court that Defendant had a previous criminal record. He had theretofore had experience with the processes of law and was generally familiar with and understood his legal rights. The testimony at the trial disclosed that he was a white male person 32 years old.

"The actual trial and matters incident thereto had consumed four full days, January 10, 11, 12 and 13, 1955. During such period of time the Defendant was in the court room and his actions, demeanor and manner were observed rather closely by the court. The jury found from the evidence that the Defendant was sane at that time.

"The Defendant again appeared personally in court on January 31, 1955, at which time his motion for new trial was heard and overruled by the court. His actions and demeanor were again observed by the court and there was nothing to indicate to the court that Defendant was other than a mature, normal person in all respects.

"Defendant next appeared in open court on October 28, 1955, at the time he was sentenced. There was nothing in his demeanor or actions at such time to indicate that he was not normal. He answered questions propounded to him coherently and with apparent understanding. His actions and appearance were in no respect unusual.

"Based upon the observation of the Defendant on all of these occasions it is the opinion of the court that Defendant was sane at the time of the trial, at the time his motion for new trial was acted upon and at the time sentence was pronounced. The court is further of the opinion ·that Defendant thoroughly understood ·the nature of the proceedings, knew and understood his legal rights, and understood

date of the Court of Criminal Appeals was filed in the Criminal District Court of Harris County on *October 24, 1955.* That four days later with counsel for the State present but without notice to Ellisor's counsel and without their presence, although they had represented him in all prior proceedings in the case, Ellisor was brought into court from the Harris County jail and sentenced to die on *December 3, 1955.* Ellisor's Counsel resided and practiced law in Houston, Texas, and/or the nearby town of Liberty, Texas, and it is stipulated that they would have been present had they been notified. Clearly this sentence should not be permitted to stand. And this is true even though Ellisor "made no request for sentence to be delayed until his counsel could be present", and even though "he . answered questions propounded to him coherently and with apparent understanding".

There is no substantial difference in principle between this case and the case of Chandler v. Fretag, supra, where it is held that the refusal of the trial Judge to give Chandler time to obtain counsel deprived him of his rights under the Constitution, and his conviction was not permitted to stand.

In a similar case in this Court, Petition of Bland, 139 F.Supp. 900, it was held that the failure of the trial Court to allow Bland time to obtain counsel rendered his trial void and it was set aside.

It will be observed that the complaint in Chandler v. Fretag, in the Bland case, and in this case, is not of the failure of the trial Court to appoint or assign Counsel, but the failure to allow the Defendant to have Counsel of his own choosing.

The Court, in Chandler v. Fretag [348 U.S. 3, 75 S.Ct. 5], adopts the reasoning in, and quotes from Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, as follows:

" 'What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. *He requires the guiding hand of counsel at every step in the proceeding against him.* Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. *If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.' "*

that this failure to state any legal reason why sentence should not then be pronounced would result in the immediate pronouncement of sentence. Defendant made no request for sentencing to be delayed until his counsel could be present. His appearance, actions and demeanor were those of a normal adult person and nothing occurred that even raised a suspicion that Defendant was of unsound mind, or that he did not fully understand and comprehend the nature of the proceedings and the questions asked him at the time sentence was pronounced."

It is said by the Court in Chandler v. Fretag (italics mine):

"The Tennessee Attorney General denies, however, that petitioner had any federal constitutional right to counsel. He relies on the doctrine enunciated in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595. But that doctrine has no application here. Petitioner did not ask the trial judge to furnish him counsel; rather, he asked for a continuance so that he could obtain his own. The distinction is well established in this Court's decisions. Powell v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158; Betts v. Brady, 316 U.S. 455, 466, 468, 62 S.Ct. 1252, 1258, 1259, 86 L.Ed. 1595; House v. Mayo, 324 U.S. 42, 46, 65 S.Ct. 517, 520, 89 L.Ed. 739. Regardless of whether petitioner would have been entitled to the appointment of counsel, *his right to be heard through his own counsel was unqualified.* See Palko v. State of Connecticut, 302 U.S. 319, 324–325, 58 S.Ct. 149, 151, 82 L.Ed. 288."

5. But it is said that since the proceedings in the Ellisor case prior to the sentence are conceded to be regular, the sentencing of Ellisor was a ministerial act, etc. It is said that this is the rule in Texas State Courts and Ex parte Oliver, 156 Tex.Cr.R. 235, 240 S.W.2d 316, 318, a habeas corpus proceeding in a death sentence case, is cited and strongly relied upon by the State.[3] The Texas Court of Criminal Appeals in that case uses this language (italics mine):

"In capital cases in this state, the sentence is not pronounced until the conviction has been finally determined upon appeal, Art. 769, C.C.P. In such cases the sentence is not a final judgment, as is contemplated in ordinary felony cases. We are constrained, therefore, to conclude that the pronouncement of sentence in a case carrying the death penalty is not such a part of the trial proper as would require the presence of counsel, either under the statute law of this state or the decisions of the Supreme Court of the United States.

*"Note is also taken of the fact that there is neither a showing nor a contention before us that any fact, circumstance, or condition existed or arose at the time the sentence was pronounced which would have altered or changed relator's status or have prevented the imposition of sentence."*

Without conceding the correctness of this view and without agreeing with the statement that the presence of Counsel is not required when a defendant is sentenced in a death case, I call attention to the italicized portion, which in effect is that nothing existed or occurred in that case that would have changed the status of or benefited the Defendant, etc. The inference seems to be that where in sentencing a defendant the trial Court has to determine and pass upon matters which materially affect the status, etc., of the defendant, the defendant's counsel must be present. Here, at the time of the sentence the trial Judge determined a matter very vital to Ellisor—the date he was to die. The jury said he must die,

3. With respect to the Oliver case, the State in its brief says:

"In State Court as in Federal Court 'a defendant is entitled to a fair trial but not to a perfect one'. Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593; Rule 52A, F.R.C.P. While it is preferable that counsel be present at the time sentence is pronounced in a death penalty case in Texas, it has been held that 'the pronouncement of sentence in a case carrying the death penalty is

not such a part of the trial proper as would require the presence of counsel, either under the statute law of this state or the decisions of the Supreme Court of the United States'. Ex parte Oliver, 156 Tex.Cr.R. 235, 240 S.W.2d 317.

"This holding as to a matter of procedure by the highest court of the State possessing criminal jurisdiction is certainly entitled to great, if not controlling, weight in the Federal Court."

but it could not fix, and did not fix the date of his execution. That date was fixed by the trial Judge in accordance with Article 798 of the Code of Criminal Procedure, which fixes only the minimum time that must elapse after sentence. It provides that the date fixed for execution must not be less than 30 days from and after the date of sentence. No maximum time is fixed and the date is left to the sound discretion of the trial Judge. He is to hear the State's Counsel, the Defendant and his Counsel, and fix the date. In Ellisor's case it was fixed by the trial Judge for December 3, 1955, Ellisor being given 35 days after the date of sentence.

I think there is no substantial difference in principle between this and those cases in the Federal Courts and other jurisdictions where the Judge at the time of sentence fixes the whole penalty or punishment, etc.[4] Clearly, Ellisor had a right to have his Counsel present to plead for a longer period of time. The State's counsel was required to be present and was present, and doubtless was heard in the matter. Why not Ellisor's Counsel? Just a few more days of life is of inestimable value to a man who is to be executed.

In Martin v. United States, 5 Cir., 182 F.2d 225, 227, 20 A.L.R.2d 1236, in passing upon the question of whether Martin was entitled to have his Counsel present when sentenced in a Federal Court, it is said (italics mine):

"The very nature of the proceeding at the time of imposition of sentence makes the presence of defendant's counsel at that time necessary if the constitutional requirement is to be met. There is then a real need for counsel. The advisability of an appeal must then, or shortly, be determined. Then is the opportunity afforded for presentation to the Court of facts in extenuation of the offense, or in explanation of the defendant's conduct; to correct any errors or mistakes in reports of the defendants' past record; *and, in short, to appeal to the equity of the Court in its administration and enforcement of penal laws. Any Judge with trial Court experience must acknowledge that such disclosures frequently result in mitigation or even suspension, of penalty. That it is also true that such discussion sometimes has a contrary result, does not detract from the fact that the nature and possibilities of this important stage of the proceedings are such as make the absence of counsel at this time presumably prejudicial.*"

Ellisor was entitled to have his counsel present when he was sentenced to plead for more time, and the fact that he had been found guilty of murder and was perhaps unlikely to receive leniency, did not deprive him of such right.

6. The trial Judge's Certificate (hereinbefore quoted in the margin) shows

4. With respect to the rule in Federal Courts, I quote from the State's brief (italics mine):
    "It is true that the Federal Courts have uniformly held that a defendant must be represented by counsel at the time of sentence. This is controlled by Article VI of the Constitution of the United States and by Federal Statute. Neither of these apply to State procedure. See Bute v. [People of State of] Illinois, supra [333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986].
    "Aside from the constitutional and statutory mandate there are valid reasons why a defendant should be represented by counsel in Federal Court. The nature of the proceedings at time of sentencing in Federal Court requires the presence and assistance of counsel.
    "It is then that notice of appeal is given if appeal is desired; then matters in extenuation of the offense should be presented to the court; explanation of defendant's past conduct should be made; errors or mistakes in reports of defendant's past criminal record should then be corrected; the advisability of requesting probation should then be determined and acted upon; *and such matters as might appeal to the equity of the court and influence the punishment to be decreed should be brought out.* See Martin v. United States [5 Cir.], 182 F.2d 225 [20 A.L.R.2d 1236]; Walton v. United States [92 U.S.App.D.C. 26], 202 F.2d 18."

that he in sentencing Ellisor considered and reached a conclusion upon several questions vital to Ellisor. To undertake to discuss them all would unduly prolong this discussion. He necessarily examined and reviewed and reached a conclusion as to the validity of all the previous proceedings in the case both in the District Court and the Court of Criminal Appeals. I do not think it correct to say that Ellisor was not entitled to have his counsel present and have them likewise review such proceedings and determine their validity even though a backward look now discloses that they were and are valid and regular. The Texas Statutes required the State's counsel to be present. Presumably he was notified, and the Record shows he was present when Ellisor was sentenced. Presumably he was present to examine and review such previous proceedings in the case and to give his views with respect to and represent the State on any questions that might arise. But Ellisor's Counsel were not notified and were not present to perform that service for him.

7. Article 773 of the Code of Criminal Procedure provides that a defendant when sentenced shall be asked by the trial Judge whether "he has anything to say why sentence should not be pronounced against him". Presumably Ellisor was asked this question. Clearly he was entitled to have his Counsel present to aid him in answering the question. The answers he was required to give under Article 773 to avoid the sentence of death are of a legal nature, and he was entitled to have legal assistance in order to fully understand them and properly answer them. While it now appears, in a backward look, that Ellisor could probably not have avoided sentence for either of the four reasons stated in Article 773, was he not entitled to have his Counsel present to take the look then instead of now? And although I have found from the backward look that Ellisor was not insane at the time he was sentenced, I am not able to say what conclusion Ellisor's Counsel would have reached if they had been present when he was sentenced.

■ 8. As hereinbefore indicated, I think the law is that a man charged with a capital offense is entitled to have his counsel present to explore for, seek out, discover and bring forward every possible point or question of law or fact at every step in the case. I believe the cases generally, including the well considered Texas cases, support this view. In view of Article 801 of the Texas Code of Criminal Procedure, allowing a man *already sentenced* to death to have not only his lawyer, but his physician, spiritual adviser, relatives and friends to visit and advise him, I do not believe that the Texas Legislature intended, in enacting the Code of Criminal Procedure, that a man should be sentenced to death without his counsel being present.

From what has been said it follows that Ellisor should be and is granted the Writ of Habeas Corpus. It does not follow that he should be released *at this time*. Ellisor is, however, entitled to have his execution stayed until he is legally sentenced.[5] Let appropriate Decree or Order be drawn and presented.

5. This is substantially the ruling in the Stay Order entered by this Court January 11, 1956. It is there said:
"Nothing herein shall prevent such Criminal District Court of Harris County, Texas, from, within such ten (10) day period, again sentencing Ellisor if it sees fit to do so. Such sentence to be with his counsel present."
The State, in its brief, says:

"If this Court should hold that the sentence is void for the reason contended for by Petitioner, the trial court could and would immediately order Petitioner brought before him for sentencing. Article 772, V.A.C.C.P., provides that if for any cause the court has failed to pronounce sentence during the term, sentence may be pronounced at any succeeding term. See Gray v. State, [107] Tex.Cr.R. [351], 296 S.W. 294."