Kenneth Howard HINKLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 42071.

Court of Criminal Appeals of Texas.

May 21, 1969.

Rehearing Denied July 16, 1969.

John P. Spiller, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, Asst. Dist. Atty., Houston, and

Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is murder with malice; the punishment, 99 years and 1 day.

The indictment charged appellant with the shooting death of Louis L. Sander, an on-duty Houston City Police Officer, on or about January 21, 1967.

We shall first consider appellant's last two grounds of error. In ground of error #15 he challenges the sufficiency of the evidence to sustain the conviction contending the trial court erred in failing to grant his motion for instructed verdict.

On the evening of January 21, 1967, shortly after 9 p. m. the deceased Sander was chatting with his partner, Officer Gene Brown, and Southern Pacific Railroad employee, Alton Lewis, at the intersection of Rothwell and McKee Streets in Houston, Harris County, Texas. Each officer was on a three-wheel motorcycle and Lewis was in his car. A pickup truck ran a stop sign and Officer Brown went south on McKee to stop it.

When Brown did not return within a short period of time Sander started to leave to check on him. Just then a brown 1965 Pontiac ran a nearby stop sign. Sander turned on Rothwell Street and followed the Pontiac. Meanwhile Lewis drove south to where Brown had stopped the pickup. He left his car to talk to Brown and it was then that they heard one shot followed seconds later by five rapidly fired shots, all coming from the area where Sander was last seen.

In their respective vehicles Officer Brown and Lewis started in that direction. They met a brown Pontiac going south on McKee. Lewis recognized it as the car that had earlier run the stop sign and observed that the color of the rear license plate was red and white. Brown observed that the Pon-tiac contained only the male driver and had no front license plate.

At the intersection of Nance and Hardy Streets they found the 24-year-old deceased Sander shot and lying on the pavement with his head against his motorcycle. His pistol from which five shots had been fired was beside his hand. A fireman, Captain C. L. Travelbee from a fire station located at the intersection, was at the scene when they arrived.

Both Travelbee and a visitor to the fire station who left such building upon hearing shots observed a brown Pontiac leaving the scene at a high rate of speed and turn south on McKee Street. It was the only car in the vicinity.

Officer Sander died about 9:30 p. m., the cause of death being a gunshot wound of the chest. The autopsy revealed that the bullet entered through the breastbone at the fourth rib and penetrated the heart and lung. Dr. Joseph Jachimczyk, County Medical Examiner, related the fatal bullet was fired from a gun which was 20 inches or so from the deceased at the time, and the circumstances, including the angle of the bullet, were consistent with a shot having been fired by a person sitting in a car while the officer was walking up to a car which was on his right.

The next morning, Sunday, at approximately 9:05 a. m. alert Police Officer E. M. Dobbs observed a brownish gold 1965 Pontiac car in a parking lot in the 100 block of Milam Street in Houston. Lewis and Brown identified the vehicle, bearing no front license plate but a 1966 red and white Arkansas license plate (1–66362) on the rear, as the automobile they had observed the night before.

The Pontiac which, when discovered, bore indentations which appeared to have been made by bullets, was shown to have been stolen in Little Rock, Arkansas, on January 7, 1967. Various witnesses, too numerous to here describe, identified the recovered Pontiac as the car they saw ap-

pellant using in Galveston and Houston during the days immediately leading up to the time of the shooting. He was shown to have been in the car in Houston earlier on the very day of the shooting. In all instances, except one the day before the killing, appellant was shown to have been alone in the car.

A glove found in the car after its discovery on the parking lot was shown by the testimony of a chemist to be identical upon microscopic examination in cloth and manufacture to three gloves recovered from the automobile in which appellant was sleeping when he was arrested in New Orleans, Louisiana.

The State's evidence shows that at approximately 10:17 p. m. appellant called his brother, Bill Hinkle, in Beaumont from a public telephone two blocks from where the Pontiac was found the next morning.

Noland, a cab driver, testified he picked up appellant at 819 Congress Street on the night in question near the Blue Moon Lounge a block or two from where the Pontiac was discovered and took him to the Eight Ball Lounge on Broadway about six miles away and arrived there about 11:45 p. m.

Tulloch, another cabbie, related he picked up appellant at the Eight Ball Lounge and carried him to the Hotel Courts shortly before midnight on the date in question.

The State's evidence shows, without contradiction, that appellant's brother, Bill Hinkle, was in Beaumont with his wife at the time of the alleged shooting of Officer Sander.

It was shown that some time after 10 p. m. on the night in question Bill Hinkle received a telephone call from the appellant in Houston and told his wife they had to go get Kenneth as he was drunk. They drove from Beaumont to Houston, found the appellant at the Hotel Courts about 1 a. m., and returned to Beaumont.

The .38 caliber bullet which killed Officer Sander was shown to have been fired from the same gun which fired a bullet into a liquor and wine cabinet in Little Rock, Arkansas during a robbery of Mr. and Mrs. Leeland Sartin which was committed by the appellant and his brother Bill on January 8, 1967. Bill Hinkle was shown to have been in possession of the pistol at the time.

Appellant did not testify or call any witness in his behalf.

■ We conclude that the evidence offered was clearly sufficient to authorize the court to deny the motion for instructed verdict and to support the jury's verdict, the court having properly charged on the law of circumstantial evidence.

Ground of error #15 is overruled.

■ Appellant claims the trial court erred in admitting, over objection, evidence of the extraneous offenses committed in Arkansas.

In 4 Branch's Ann.P.C., 2nd ed., Sec. 2255, p. 616, it is written:

"Testimony as to the commission of other crimes or offenses by the defendant is not admissible unless such other crime or offense has some bearing or relation to the case for which he is on trial. But relevant evidence which proves or tends to prove the identity of the defendant, connects him with the offense charged, disproves a claimed defense, or which shows intent, malice, system, motive, res gestae, or the defendant's state of mind, is admissible although by such proof it is also shown that the defendant took part in or committed another crime or offense."

The extraneous offenses were offered by the State to establish identity and to show motive. The court in its charge properly limited consideration of such evidence to the purposes for which they were offered.

Appellant cites and relies upon Hafti v. State, Tex.Cr.App., 416 S.W.2d 824, and Bennett v. State, Tex.Cr.App., 422 S.W.2d 438. In both of those cases an instrument (a gun in Hafti and a tire tool in Bennett) was shown to be the fruit of a former unrelated crime, there being nothing to show that the fact had a bearing or any relation to the case being tried.

Further, we quote from the able brief prepared by Assistant District Attorney James C. Brough:

"In *Hafti* it was expressly pointed out that the proof as to the manner in which defendant there got the gun was not necessary to prove intent or identity.

"In the case at bar, there is no eye-witness as to identity, as was the case in *Hafti*. Here the issue of identity was equivocal, was based on circumstantial evidence, and required connections which could not be made without evidence of the theft of an automobile being used by Appellant on the day of the offense, and of a robbery in which a bullet was fired from the same pistol which killed Officer Sander.

"Clearly, the evidence as to the robbery is necessary to prove identity, and the proof of the car theft goes to motive and intent. A man driving a stolen car, when stopped by an officer for a traffic violation, is far more likely to shoot the officer than is one with a clear conscience. Ellisor v. State [162 Tex.Cr.R. 117], 282 S.W.2d 393, cited in Spencer v. Texas [385 U.S. 554], 87 S.Ct. 648 at 652 [17 L.Ed.2d 606], and Chavira v. State [167 Tex.Cr.R. 197], 319 S.W.2d 115.

"Where, as here identity and intent are in issue, and are equivocal, and the State relies on circumstantial evidence, relevant proof involving extraneous offenses is admissible on the State's case in chief. McClelland v. State [Tex.Cr.App.], 389 S.W.2d 678 at 682.

"Clearly, there was no error resulting from proof of the extraneous offenses, or of the State's opening statement which accurately set forth proof to be made."

We are in full accord with the State's position. See Parks v. State, Tex.Cr.App., 437 S.W.2d 554.

Ground of error #16 is overruled.

Appellant's first claim of error is that he was illegally arrested in New Orleans on January 24, 1967, by F.B.I. Agent Zigrossie and the fruits of a search incident to this arrest were improperly admitted into evidence.

There was no objection to the testimony of what was found as a result of such search and when such items were offered the only objection was that such evidence was "immaterial."

Only recently in Spencer v. State, Tex. Cr.App., 438 S.W.2d 109, involving the search of an automobile after arrest, we said:

"The sole question presented for review is the admission into evidence of the pistol and the bullets. The only objection was that such evidence was not material. It is axiomatic that an objection to the admission of evidence or testimony cannot be reviewed in the absence of any ground of objection. See cases collated at 13A Tex.Dig., Criminal Law, ☞1120(8). We cannot bring ourselves to conclude that an objection to the introduction of evidence 'as not being material to the case' was sufficiently explicit to point out to the court why appellant objected to the proffered evidence."

An objection to admission of evidence must be specific and must state grounds of the objection. 5 Tex.Jur.2d, Appeal and Error—Criminal Cases, Sec. 41, p. 68; Alcorn v. State, Tex.Cr.App., 415 S.W.2d 666; Korb v. State, Tex.Cr.App.,

402 S.W.2d 166; Smith v. State, Tex.Cr. App., 437 S.W.2d 835.

Ground of error #1 is overruled

■ In ground of error #2 appellant contends he was illegally transported or extradited by federal officers across state lines from New Orleans, Louisiana to Houston, Texas. The record does not support this claim, but even if true such illegal removal does not afford an accused's immunity from prosecution. Garcia v. State, Tex.Cr.App., 427 S.W.2d 897; Ex parte Burge, Tex.Cr.App., 409 S.W.2d 403; Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541; 1 Branch's Ann.P.C., 2nd ed., Sec. 268, p. 304; 16 Tex.Jur.2d, Criminal Law, Sec. 199, p. 355; 25 Tex. Jur.2d, Extradition, Sec. 40, p. 204.

■ In ground of error #3 appellant contends the indictment is fatally defective because of the absence of an allegation therein that he "voluntarily" killed the deceased. The indictment did, however, allege that the killing was done "with malice aforethought" and such indictments have been held sufficient despite the failure to use the word "voluntarily." Sanders v. State, Tex.Cr.App., 402 S.W.2d 735.

Ground of error #3 is overruled.

■ Next appellant contends he was never formally arraigned as required by Article 26.01, Vernon's Ann.C.C.P. The judgment and docket sheet contained in a record to which appellant addressed no objections (See Article 40.09, Sec. 7, V.A. C.C.P.) clearly reflect appellant was duly arraigned. Further, Article 44.24, V.A.C. C.P., provides that his Court shall presume the defendant was arraigned unless such matter was made an issue in the trial court or it affirmatively appears to the contrary in the record. Boening v. State, Tex.Cr. App., 422 S.W.2d 469.

Ground of error #4 is overruled.

■ The court did not err in overruling appellant's motion for a change of venue since it was not supported by the affidavit of at least two credible persons, residents of the county where the prosecution was instituted, as required by Article 31.03, V.A.C.C.P.

Ground of error #5 is overruled.

■ In grounds of error #6 and #7 appellant complains of the method of jury selection relying upon Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. First we observe that the voir dire examination of the jury panel is not in the record before us nor is there any showing that the appellant requested the same to be taken. See Article 40.09, Sec. 4, V.A.C.C.P. Nothing is presented for review. Joseph v. State, Tex.Cr.App., 442 S.W.2d 397 (April 23, 1969). Further, we note that Witherspoon has no application where as in the case at bar the death penalty is not imposed. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; Parks v. State, Tex.Cr.App., 437 S.W.2d 554.

In his eighth ground of error appellant urges the court erred in overruling his motion for all evidence in the State's possession favorable to him either on the issue of guilt or punishment.

Appellant's pre-trial motion for discovery under the provisions of Article 39.14, V.A. C.C.P., was properly overruled as being too broad to be effective. Sonderup v. State, Tex.Cr.App., 418 S.W.2d 807; Smith v. State, Tex.Cr.App., 409 S.W.2d 408.

Appellant, however, relies upon his motion filed after the State had rested the case in chief at the guilt stage of the proceedings and cites Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

Only recently we had occasion to discuss at length the constitutional duty of a prosecutor to disclose. Means v. State, Tex.Cr. App., 429 S.W.2d 490.

■ On the same morning the motion was filed and overruled. Defense Exhibits 1 through 12 (photographs of ballis-

tics tests) were furnished to appellant by the District Attorney and a stipulation entered that the .38 caliber pistol found in appellant's possession at the time of his arrest in New Orleans was not the death weapon. Appellant nevertheless claims there existed certain other items (listing them in the appellate brief but not in the original motion) which were not disclosed to him by the prosecutor. Appellant's court appointed counsel on appeal candidly admits that nothing in this record shows that such items exist, but advances the claim upon appellant's personal insistence. Further, we note that there is no claim that the existence of such items, if any, was not known to the appellant and his court appointed trial counsel during the trial. Under these circumstances we perceive no reversible error.

Ground of error #8 is overruled.

Next appellant complains generally that his special requested charges and objections to the court's charge were overruled and denied, and then makes five additional complaints in regard to the jury instructions.

■ The complaints all appear to be without merit, but we need not consider them. A general and multifarious assignment of error has been expressly held to be improper. The brief, in assigning error, must state the grounds separately. Article 40.09, Sec. 9, V.A.C.C.P.; Keel v. State, Tex.Cr.App., 434 S.W.2d 687; Crotts v. State, Tex.Cr.App., 432 S.W.2d 921.

Ground of error #9 is overruled.

■ In his tenth ground of error appellant complains of the court's action in admitting State's Exhibit No. 43, a photograph with a deletion in such size and shape as to indicate that a body had been cut from the balance of the picture. The exhibit purportedly portrayed the motorcycle which the deceased had been riding. The deletion came about in the following manner. Appellant objected that the exhibit as originally offered also appeared to contain a pool of blood. This objection was met by the court ordering that portion of the photograph be cut out. Thereafter appellant's counsel withdrew his objection and the exhibit was admitted into evidence.

Ground of error #10 is overruled.

■ In his next ground of error appellant complains of the court's action in permitting, over objection, Mrs. Sander, the deceased's widow, to testify. This alleged error is similar to one advanced recently in Whan v. State, Tex.Cr.App., 438 S.W.2d 918 (February 26, 1969) in which this writer concurred. When the widow was called the appellant objected on the grounds that she was not a witness to the alleged offense and that the identity of the deceased had been clearly established and was not disputed. Appellant did not object to any of the eight questions asked the witness and no prejudicial testimony was heard, Ramos v. State, Tex.Cr.App., 419 S.W.2d 359, though the reporter's notes indicate the witness became "emotionally upset" and at one point was "crying audibly." The tears of the deceased's widow in the courtroom are not grounds for reversal. Burge v. State, 73 Tex.Cr.R. 505, 167 S.W. 63; Todd v. State, 93 Tex.Cr.R. 553, 248 S.W. 695. While it might be argued that Mrs. Sander's testimony as to identification and health of the deceased prior to the killing was cumulative and not essential to the State's case, she was still a competent witness and the court did not err in allowing her to testify.

Ground of error #11 is overruled.

In grounds of error #12 and #13 appellant claims the jury verdict is void since it finds the appellant both "not guilty" and "guilty" and that the court erred in making only the guilty portion the basis of the judgment. Reference is made to the verdict received at the conclusion of the guilt stage of the bifurcated trial. Rather

than using separate forms or pages the court submitted without objection the possible forms of verdict to the jury on a single page as follows:

"CAUSE NO. 124,577

| | |
|---|---|
| THE STATE OF TEXAS | IN THE 180TH DISTRICT COURT OF HARRIS COUNTY, TEXAS |
| VS. | AUGUST TERM, A.D. 1967 |
| KENNETH HOWARD HINKLE | |

### VERDICT OF THE JURY

We, the jury, find the defendant not guilty.

_____
Foreman

We, the jury, find the defendant guilty.

_____
Foreman"

———◆———

When the verdict was received only the bottom form was signed by the foreman, but the entire page was filed as the verdict of the jury without striking or crossing out, with the jury's permission, the form not used. It is appellant's contention that with the foreman's signature at the bottom of the page the jury's verdict was both "not guilty" and "guilty."

 We find no merit in such claim. The record reveals that the jury was polled and there was no objection to receiving the verdict or in proceeding onto the penalty stage of the trial. At the conclusion of that hearing the jury returned its final verdict which is the real basis of the judgment and it reads as follows:

"We, the jury, having found the defendant guilty as charged in the indictment, assess his punishment at 99 years and 1 day in the Texas Department of Correction.

(s) H. G. Gremminger
Foreman."

"Verdicts should receive a liberal rather than a strict construction, and if the finding of the jury can be reasonably ascertained the verdict should be held good as to form. The object should be to ascertain the intention of the jury." 1 Branch's Ann.P.C., 2nd ed., Sec. 666, p. 644.

The case at bar is easily distinguishable from Stewart v. State, 422 S.W.2d 928, where the foreman signed three verdict forms, each assessing a different penalty.

Grounds of error #12 and #13 are overruled.

 Appellant is correct in contending in ground of error #14 that the sentence does not give application to Article 42.09, V.A.C.C.P., the Indeterminate Sentence Law. Therefore, the sentence is reformed to order appellant's confinement in the Texas Department of Corrections for a term of not less than 2 years nor more than 99 years and 1 day, the minimum punishment for murder being two years. See Article 1257, V.A.P.C.

As reformed, the judgment is affirmed.